Robert B. Mobasseri (SBN 193193)
David Alan Cooper (SBN 190203)
**LAW OFFICES OF ROBERT B. MOBASSERI, PC**
15760 Ventura Boulevard, Suite 850
Encino, California 91436
Tele: (213) 282-2000 | Fax: (213) 282-3000
Email: DCooper@MobasseriLaw.com

Attorneys for Plaintiff:  TOMMY HUYNH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY HUYNH,<br><br>        Plaintiff,<br><br>   vs.<br><br>TOYOTA MOTOR SALES, U.S.A., INC.; DOES 1 through 100, Inclusive,<br><br>        Defendants. | Case No.:<br><br>COMPLAINT FOR:<br>1.   Breach of Implied Warranty of Merchantability under Song-Beverly Consumer Warranty Act, CA Civil Code § 1790 et seq.<br>2.   Breach of Consumers Legal Remedies Act, CA Civ.C § 1770 et seq.<br><br>DEMAND FOR JURY TRIAL |

1.      Plaintiff TOMMY HUYNH ("Plaintiff") brings this action against Defendants TOYOTA MOTOR SALES, U.S.A., INC. (hereafter "Toyota") and DOES 1 through 100, inclusive, and seeks a trial by jury against these defendants.

## JURISDICTION AND VENUE

2.      Diversity of citizenship jurisdiction is shown for the United States District Court for the Central District of California because Toyota is a corporation headquartered in Plano, Texas.  Additionally, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and other costs, per 28 U.S.C. § 1332. Plaintiff seeks actual damages of $58,235, plus punitive damages according to proof.

1  Further, Plaintiff's reasonably-anticipated statutory attorney's fees under 15 U.S.C.
2  § 2310(d)(2)—which as a matter of law are not considered "costs" under of 15
3  U.S.C. § 2310(d)(3)—are likely to exceed $75,000.

4  3.  The United States District Court for the Central District of California may
5  exercise supplemental jurisdiction over Plaintiff's State-law claims pursuant to 28
6  U.S.C. §1367.

7  4.  Venue is proper in this District pursuant to 28 U.S.C. §1391. The transactions
8  giving rise to the claim occurred in this Judicial District, specifically a purchase at
9  3534 N. Peck Rd., El Monte CA 91731. Also, Toyota does substantial business in
10 the State of California and within this Judicial District, is registered to and is doing
11 business within the State of California, and otherwise maintains requisite minimum
12 contacts with the State of California. Also, the property at issue remains within this
13 Judicial District.

## **GENERAL ALLEGATIONS**

15 5.  Plaintiff, at all times relevant a California resident of Los Angeles County,
16 on March 17, 2021, purchased a new 2021 Toyota Mirai XLE vehicle manufactured
17 by Toyota. The vehicle had just 4 miles on the odometer at lease and was bearing
18 VIN JTDAAAAA3MA001142 ("Vehicle"). The price of the Vehicle, including
19 financing, was $58,235.40. The Vehicle came with an all-inclusive warranty for the
20 lesser of 3-years or 36,000 miles, and other warranties.

21 6.  The Vehicle is "hydrogen-powered," meaning its fuel tank holds liquid
22 hydrogen, which is used to power an electric motor that propels the vehicle. The
23 Vehicle was advertised by Toyota and its dealership network including Dealer as
24 having "zero-emissions" and a range of 402 miles on a single tank of hydrogen. The
25 over-400-mile range was advertised in such forums as Toyota's website at
26 https://www.toyota.com/mirai/features/mileage_estimates/3002.

27 7.  For Plaintiff, the over-400-mile range was a major selling point for the
28 Vehicle. That meant the Vehicle, unlike many other "zero emissions" vehicles

which had much lower ranges, could be driven in a normal fashion. Plaintiff relied on Toyota's advertising would not have purchased the Vehicle if it, in fact, was not capable of achieving the advertised range in ordinary use.

8. Unfortunately, the Vehicle is not capable of being driven anywhere close to 400 miles on a single tank of hydrogen in ordinary use, nor are like models of the Vehicle capable of that, generally. Toyota's advertising, which continued to the present, was false on that point. Plaintiff since purchase has attempted to maximize the range of the Vehicle by driving conservatively, not using air conditioning, not accelerating quickly, not driving at high speeds, cruising at steady speeds, driving with the windows up, and not carrying heavy loads, but under no circumstances has been able to achieve a range over approximately 250 miles per tank.

9. Plaintiff alleges on information and belief that Toyota knew, by virtue of its own product testing, that its maximum-range figure was grossly inflated. This is not only a significant inconvenience for an average driver like Plaintiff, but places the Vehicle within the advertised range of less expensive "zero-emissions" vehicles which cost half as much. Moreover, because hydrogen-fueling stations are few and far between, a range of only 250 miles is even more of a detriment.

10. Toyota also advertised itself, both directly and through its dealer network, as being in a "partnership" with providers of a growing hydrogen-fuel system in California, including a "partnership" with Shell. Toyota's assurances in its advertising, explicit and implied, that it was not only selling a new-technology vehicle, but through its "partnership" was ensuring the availability of fuel for such vehicles, was also a major selling point on which Plaintiff relied.

11. Toyota also offered and continues to offer financial incentives such pre-paid "fuel cards" which, so it assured customers both directly and through its dealership network, would allow customers to obtain *years* of expected fuel for the Vehicle using the credits on the "fuel cards." Toyota both directly and through its dealership network assured customers that hydrogen fuel prices were comparable to gasoline

prices and would drop as availability of hydrogen fuel increased. Toyota's assurances in this regard were also a major selling point on which Plaintiff relied.

12. Yet, Toyota's assurances in connection with its vaunted "partnership" with hydrogen providers, a supposedly growing hydrogen-provider network, and a "fuel card" having sufficient credits to pay for years of hydrogen fuel, were false. The "partnership" with Shell, on information and belief, did not place Toyota in a position of control over the hydrogen-fuel network. That network soon collapsed, and Shell in early 2024 announced the permanent closure of its hydrogen fueling stations. Other fuel networks likewise shut down or contracted during Plaintiff's use of the Vehicle. The reduction of hydrogen supply then caused the cost of hydrogen fuel to skyrocket, leading to a substantial devaluation of the "fuel cards" which induced the sale of the Mirai vehicles, including to Plaintiff. The end result has been the *unavailability* of hydrogen fuel within any reason distance of Plaintiff's residence, and then when hydrogen fuel is located, the increase price of the fuel, plus the cost to reach the fuel station, make the cost of operation prohibitive.

## FIRST CAUSE OF ACTION

Breach of Implied Warranty of Merchantability in Violation of Song-Beverly Consumer Warranty Act, Civil Code Sections 1790 et seq.

(By Plaintiff against Toyota and Does 1-50)

13. Plaintiff incorporates each allegation set forth in the preceding paragraphs of this complaint.

14. Pursuant to the Song-Beverly Consumer Warranty Act at Civil Code § 1790, *et seq.,* the Vehicle constitutes "consumer goods" purchased or leased primarily for family or household purposes. Toyota issued an express warranty relating to future performance of the Vehicle. Therefore, under California law, Plaintiff at purchase also received an implied warranty of merchantability.

15. Unfortunately, the Vehicle was sold with defects and/or nonconformities which rendered it unfit for ordinary use, including per Civil Code § 1791.1 that the

1  Vehicle passes without objection in the trade under its contract description, was fit
2  for the ordinary purposes for which such goods are used, was adequately packaged
3  and labeled, and conformed to the promises or affirmations of fact made on its label.
4  16.     Plaintiff per Civil Code § 1794(b)(1) rightfully rejects and justifiably revokes
5  acceptance of the Vehicle and demands rescission and restitution of all monies paid
6  for the Vehicle (downpayment, monthly payments, finance charges, taxes,
7  registration, insurance premiums and other incidental and consequential expenses),
8  plus additional forms of recovery permitted by Commercial Code Sections 2711,
9  2712 and 2713, including inspection and transportation costs, pursuant to Civil Code
10 Section 1794 for implied-warranty violations.

## SECOND CAUSE OF ACTION

Breach of Consumers Legal Remedies Act at Civil Code Sections 1770 et seq.

(By Plaintiff against Toyota and Does 51 to 100)

17.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

18.     The Vehicle constitutes "goods" bought for primarily personal, family, or household purposes per Civil Code §1761(a).  Plaintiff is a "consumer" per Civil Code § 1761(d).  The advertisement and sale of the Vehicle to Plaintiff are a "transaction" per to Civil Code § 1761(e).

19.     The defendants violated the Consumers Legal Remedies Act as follows: misrepresenting the source, sponsorship, approval, or certification of goods or services (Civil Code § 1770(a)(2)); representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have (Civil Code § 1770(a)(5)); representing that goods or services are of a particular standard, quality, or grade, if they are of another (Civil Code § 1770(a)(7)); advertising goods or services with intent not to sell them as advertised (Civil Code § 1770(a)(9)); representing that a transaction confers or involves rights, remedies or obligations which it does not have or involve, or which

are prohibited by law (Civil Code § 1770(a)(14)); representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)).

20. The above statutory provisions were violated, and Plaintiff suffered actual damage thereby, due to the defendants' concealments and misrepresentations as described above. Moreover, Plaintiff would not have acquired the vehicle if the defendants had been forthright in their disclosures. Plaintiff seeks an order prohibiting the defendants from engaging in the acts described above. These violations of Civil Code § 1770 present a continuing threat to members of the public and will not cease until an injunction is issued by this Court.

21. Plaintiff also seeks pursuant to Civil Code § 1780, in addition to the injunctive remedies set forth above, actual, consequential and incidental damages, rescission and restitution, attorney's fees and other litigation costs.

22. Further, the defendants acted with malice, oppression, and/or fraud towards Plaintiff, within the meaning of Civil Code § 1780(a)(4) and Civil Code § 3294, thereby entitling Plaintiff to an award of punitive damages. The defendants' corporate officers, directors, or managing agents personally acted with oppression, fraud, or malice; had advance knowledge of the unfitness of the employees who acted towards Plaintiff with malice, oppression, or fraud; employed such employees with conscious disregard for the rights or safety of others; and/or themselves authorized or ratified the wrongful conduct.

23. Plaintiff has served the demand letter required by Civil Code Section 1782, but the defendants did not timely respond with an offer of appropriate correction, repair, replacement, or other remedy, within a reasonable time, within 30 days after receipt of the demand letter.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For rescission and restitution on the First and Second Causes of Action;
2. An injunctive order on the Second Cause of Action;

3. Punitive damages on the Second Cause of Action;
4. Incidental and consequential damages on the First and Second Causes of Action;
5. For pre-judgment interest at the maximum legal rate;
6. For statutory attorney's fees and other costs of suit;
7. Any other relief as the Court deems just and proper.

Dated: March 15, 2024          LAW OFFICES OF ROBERT B. MOBASSERI, PC

By: _____
Robert B. Mobasseri (SBN 193193)
David Alan Cooper (SBN 190203)